IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

RICKY W. TAYLOR, et al.,

    PLAINTIFFS,

v.                             CASE NO.: CV-02-J-1791-S

DON SIEGELMAN, et al.,

    DEFENDANTS.

## <u>MEMORANDUM OPINION</u>

This case came on to be heard on the plaintiffs' motion for temporary restraining order and interlocutory injunction (doc. 2), which the court set for a hearing on the court's motion docket of September 11, 2002. Each party was present by and through his counsel of record and the court heard oral argument on said motion. The court has considered said motion, the arguments of the parties as well as the voluminous pleadings, oppositions, evidence filed by the parties in support of and against said injunction, as well as defendants' various pending motions to dismiss (docs. 16, 17, 18, 20 and 22). At the plaintiffs' request, the court allowed the plaintiffs up to and through September 23, 2002 to respond to the outstanding motions to dismiss. Several of the parties have also submitted citations to the court concerning the court's questions at the hearing concerning the abstention doctrine.



## Factual Background

The plaintiffs are an assortment of individuals and individuals doing business as owners of video gaming establishments.  Complaint at ¶¶ 5-14.  Plaintiffs seek a declaratory judgment from this court that the seizure of their video gaming machines are legal under Alabama law, pursuant to 28 U.S.C. §§ 2201 and 2202.  Complaint at ¶ 1.  Further, the plaintiffs want this court to declare portions of the Alabama Code unconstitutional as void for vagueness.  The plaintiffs also request a return of the machines seized by the various defendants to date on the theory that such seizures amount to takings without just compensation.  The plaintiffs sue pursuant to 42 U.S.C. § 1983 for violations of their 4th, 5th, and 14th Amendment rights, seeking injunctive and declaratory relief.

The plaintiffs "seek a judicial determination of issues, rights and liabilities embodied in an actual and present controversy between the parties involving the constitutional validity and application of ALABAMA CODE §§13A-12-20 through 13A-12-54, inclusive, §§13A-12-70 through 13A-12-76, inclusive, and ALABAMA CONSTITUTION OF 1901 §65." Complaint at ¶ 3.  The plaintiffs base their claim that the machines in question are legal under Alabama law on a number of advisory opinions, including *Opinion of the Justices*, 692 So.2d 107 (Ala.1997) (stating degree of skill of player has bearing on legality of activity under Alabama Constitution § 65);

*Opinion of the Justices*, 795 So.2d 630 (Ala.2001) (stating if chance dominates over skill, legislative sanctioning of activity violates Alabama Constitution § 65); and an opinion of the Attorney General for the State of Alabama (stating that bona fide amusement machines, such as gambling devices and slot machines, are an illegal lottery, that § 13A-12-76 Ala.Code encompasses only transportation of lottery paraphernalia and that this code section violates the Alabama Constitution). Plaintiffs concede that none of these opinions has the force of law. Complaint at ¶¶ 27-34. Plaintiffs also rely on the Montgomery Circuit Court case of *State v. Ray & Ann's Place,* CV-98-325-WRG, *aff'd without opinion*, 789 So.2d 248 (Ala.Civ.App.1999) (table).[1]

    Article IV, Section 65 of the Alabama Constitution states:

> The legislature shall have no power to authorize lotteries or gift enterprises for any purpose, and shall pass laws to prohibit the sale in this state of lottery or gift enterprise tickets, or tickets in any scheme in the nature of a lottery; and all acts, or parts of acts heretofore passed by the legislature of this state, authorizing a lottery or lotteries, and all acts amendatory thereof, or supplemental thereto, are hereby voided.

---

[1]Plaintiffs assert that case stands for the proposition that the type of machines in question are not slot machines or gambling devices if they comply with §13A-12-76. Complaint at ¶ 36. Obviously, as a general proposition, if something complies with the law, it is not illegal. Such a statement does not help the plaintiffs' case. In overruling the application for rehearing, Judge Monroe of the Alabama Court of Civil Appeals concurred specially, with several observations: Most importantly, he states "I am not making a conclusive determination that the arcade games at issue do not constitute gambling devices. I am agreeing with the trial court that, in this particular case, the State failed to meet its burden of proving that the games were illegal gambling devices. This court's decision to affirm the trial court in this matter has nothing to do with our deciding whether the two machines in question were illegal gambling devices. Instead, it has everything to do with adhering to our duty as a court to demand that the parties ... prove their cases as the law requires." *State v. Ray & Ann's Place,* 765 So.2d 19, 19-20 (Ala.Civ.App.2000).

Section 13A-12-76, Alabama Code 1975, as amended, states in relevant part:

**Coin-operated games for bona fide amusement purposes**.

(a) Sections 13A-12-70 to 13A-12-75, inclusive, shall not apply to a coin-operated game or device designed and manufactured for bona fide amusement purposes which, by application of some skill, only entitles the player to replay the game or device at no additional cost if a single play of the bona fide coin-operated amusement machine or device can reach no more than 25 free replays or can be discharged of accumulated free replay, or rewards the player exclusively with merchandise limited to noncash merchandise, prizes, toys, gift certificates, or novelties, each of which has a wholesale value of not more than five dollars ($5)....

...

(e)(1) For purposes of this section, "bona fide coin-operated amusement machine" means every machine of any kind or character used by the public to provide amusement or entertainment whose operation requires the payment of or the insertion of a coin, bill, other money, token, ticket, or similar object, and the result of whose operation depends in whole or in part upon the skill of the player, whether or not it affords an award to a successful player, and which can be legally shipped interstate according to federal law. Examples of bona fide coin-operated amusement machines include, but are not limited to, the following:

a. Pinball machines.
b. Console machines.
c. Video games.
d. Crane machines.
e. Claw machines.
....
s. Any other similar amusement machine which can be legally operated in Alabama.

(2) The term "bona fide coin-operated amusement machine" does not include the following:

...

j. Machines which are not legally permitted to be operated in Alabama.

k. Slot machines.

*l*. Video poker games.

(f) Any person owning or possessing an amusement game or device described in subdivision (1) of subsection (e) or any person employed by or acting on behalf of another person who gives to another person money for noncash merchandise, prizes, toys, gift certificates, or novelties received as a reward in playing an amusement game or device shall be guilty of a Class A misdemeanor.

Plaintiffs Ricky W. Taylor and Ricky W. Taylor d/b/a Treasure Chest (collectively referred to as "Taylor") state that he did business in Calhoun County from February, 2001 to March, 2002. Complaint at ¶¶ 37-38. Defendants Hubbard and Amerson held a press conference in August, 2001, stating that, in their opinions, the operation of video arcade games was not legal. Complaint at ¶ 40. However, they stated they planned no enforcement action until certain cases pending in the state appellate courts were resolved. Complaint at ¶ 42. As of the date of filing this complaint, said state court cases were still pending. Complaint at ¶ 43. In March, 2002, defendant Hubbard sent a letter to arcades in Calhoun County, allegedly ordering the businesses closed. Plaintiff Taylor complied.[2] Complaint at ¶¶ 45-46.

---

[2]Each plaintiff alleges his establishment contained only machines "lawful under Alabama Code § 13A-12-76." *See* complaint at ¶ 46, 48, 59, 64. However, the court finds the legality of the machines in question under Ala.Code § 13A-12-76 is the very issue plaintiffs have placed before this court.

Plaintiffs Philip T. Rabne and Philip T. Rabne d/b/a Lucky's Recreation Solutions (collectively referred to as "Rabne") allege that, in March 2002, defendant Woodward sent a copy of defendant Pryor's advisory opinion to all video gambling arcades in unincorporated areas of Jefferson County.  Complaint at ¶ 47.  Rabne states later in March, 2002, three Birmingham police officers came in his business and made notes.[3]  Complaint at ¶ 48.  He was informed that his machines were illegal under state law and Rabne closed his business.  Complaint at ¶¶ 49-50.  After being informed that his machines would not be seized, Birmingham police officers seized forty-six machines.[4]  Complaint at ¶¶ 55-56.

Plaintiffs Jeff Jordan and Jeff Jordan d/b/a New South Arcade (collectively referred to as "Jordan") assert that Birmingham police officers told him he had to close his business by midnight on March 24, 2002.  Complaint at ¶ 58.  Before that date arrived, Birmingham police officers seized thirty-seven machines and approximately $1,700.00 in cash.[5]  *See* complaint at ¶¶ 58-59.  On June 5, 2002, Jordan received a copy of the State's motion to schedule an administrative hearing

---

[3]From Rabne's allegations, the court is unclear as to whether this plaintiff was doing business in unincorporated Jefferson County, or within the Birmingham city limits.

[4]*See State of Alabama v. 46 Gambling Machines, In Possession of Phillip Rabne*, CV 2002-2479 (Circuit Court of Jefferson County).

[5]*See State of Alabama v. $2,433.00 U.S. Currency and 36 Gambling Machines, In Possession of Jeffery Jordan*, CV 2002-2225 (Circuit Court of Jefferson County).

regarding forfeiture of his property, however no such hearing has yet been scheduled. Complaint at ¶ 60. The machines seized from Jordan are the subject of a forfeiture action pending in the Circuit Court of Jefferson County, *State of Alabama v. $2,433.00, et al.*, CV 2002-2225.

Plaintiffs Jimmie Williams, Tal-Kan, Inc. d/b/a AJ's Arcade, and Jimmie Williams d/b/a Player's World (collectively referred to as "Williams") were informed by a Jefferson County police officer that Williams should close AJ's for about six weeks. Complaint at ¶ 64. Thereafter, officers from the Jefferson County Sheriff's Department came into the business to play the machines in question. Complaint at ¶ 66. After four weeks of this, these officers told Williams they would return with a warrant and seize these machines. Complaint at ¶ 68. True to their word, the officers returned and seized twenty-seven games and $466.00.[6] Complaint at 69.

Similarly, Williams' St. Clair County business, Player's World, was told to close or risk arrest and charges. Complaint at ¶ 70. *See also* Exhibit 6 to plaintiffs' memorandum in support of plaintiffs' motion for temporary restraining order.

Plaintiff Alton Cooper ("Cooper") is also an owner of AJ's Arcade. Complaint at ¶ 12. However, plaintiffs state no specific facts relevant to this plaintiff in their

---

[6]*See State of Alabama v. $466.00 U.S. Currency and 27 Gambling Machines, In Possession of Jimmie Williams and Alton Cooper*, CV 2002-2937 (Circuit Court of Jefferson County).

complaint.  The court does note that Cooper is listed as a property owner in *State of Alabama v. $466.00 U.S. Currency and 27 Gambling Machines, In Possession of Jimmie Williams and Alton Cooper,* CV 2002-2937.

In their complaint, plaintiffs sue for a violation of the 14th Amendment for "unlawful takings without just compensation and enforcement of the Attorney General's opinion violates plaintiffs' due process rights" under 42 U.S.C. § 1983 (Count I); a violation of the 14th Amendment for unlawful deprivation of property without due process, pursuant to 42 U.S.C. § 1983 (Count II); a violation of their due process rights by seizing property denominated contraband without legal authority (Count III); defendants' failure to provide adequate post-deprivation procedural due process (Count IV); and that defendants are taking plaintiffs' property in reliance on an "unconstitutionally vague" scheme (Count V).

### The motions to dismiss

Due to the dispositive nature of the motions to dismiss, the court considers these motions before the preliminary injunction.[7]  The motions to dismiss raise numerous grounds on which defendants allege plaintiffs have failed to state a claim upon which relief can be granted or by which this court lacks jurisdiction.  The court has reviewed

---

[7]Obviously, if the motions to dismiss are due to be granted, the plaintiffs cannot be said to be likely to succeed on the merits of their case and would therefore not be entitled to a temporary restraining order or preliminary injunction.  *See e.g., Palmer v. Braun,* 287 F.3d 1325, 1329 (11th Cir.2002).

each motion to dismiss, each memorandum in support of the motions to dismiss, the

plaintiffs' submissions in opposition, and the various opinions of courts in other cases

facing similar litigation on the legality of the plaintiffs' businesses.  The court finds

that, under the abstention doctrine, this court should not reach any decision on the

merits of this case.  While the plaintiffs have artfully stated their claims as

unconstitutional takings without just compensation, the court finds the pivotal

question here is really whether or not the machines in question are legal under

Ala.Code § 13A-12-76, or fall within Ala.Code § 13A-12-20(5)[8], which defines a

"gambling device" and Ala.Code § 13A-12-30(a)[9] which states that gambling devices

are subject to forfeiture to the state.  If said machines are illegal gambling devices, the

plaintiffs' claims of unlawful seizures must fail.  This is the very question currently

pending in Alabama courts.  *See e.g., Kevin Sharpe Enterprises, Inc. and Barry Kelly

v. State of Alabama*, Court of Civil Appeals, No. 2010009 (Appeal from the Circuit

Court of Jefferson County, CV 99-7032) (defendant Barber's memorandum, at 3);

---

[8] § 13A-12-20(5) reads as follows:
GAMBLING DEVICE.  Any device, machine, paraphernalia or equipment that is normally used or usable in the playing phases of any gambling activity, whether that activity consists of gambling between persons or gambling by a person involving the playing of a machine. However, lottery tickets, policy slips and other items used in the playing phases of lottery and policy schemes are not gambling devices within this definition.

[9] § 13A-12-30 states:
**Forfeitures.**
(a) Any gambling device or gambling record possessed or used in violation of this article is forfeited to the state, and shall by court order be destroyed or otherwise disposed of as the court directs.

*Pryor v. Westfaul*, CV 99-7032 (Circuit Court of Montgomery County) (defendant

Siegelman's memorandum, at 11).

In *Younger v. Harris*, 401 U.S. 37, 42, 91 S.Ct. 746, 749, 27 L.Ed.2d 669

(1971), a case concerning federal review of the constitutionality of a state law, the

United States Supreme Court stated that "[a] federal lawsuit to stop a prosecution in

a state court is a serious matter." The Court explained this statement as follows:

> Since the beginning of this country's history Congress has, subject to
> few exceptions, manifested a desire to permit state courts to try cases
> free from interference by federal courts....
>
> The precise reasons for this longstanding public policy against federal
> court interference with state court proceedings have never been
> specifically identified but the primary sources of the policy are plain.
> One is the basic doctrine of equity jurisprudence that courts of equity
> should not act, and particularly should not act to restrain a criminal
> prosecution, when the moving party has an adequate remedy at law and
> will not suffer irreparable injury if denied equitable relief .... This
> underlying reason for restraining courts of equity from interfering with
> criminal prosecutions is reinforced by an even more vital consideration,
> the notion of 'comity,' that is, a proper respect for state functions, a
> recognition of the fact that the entire country is made up of a Union of
> separate state governments, and a continuance of the belief that the
> National Government will fare best if the States and their institutions are
> left free to perform their separate functions in their separate ways ....

*Id.,* 401 U.S. at 43-44, 91 S.Ct. at 750. The Court continued:

> This brief discussion should be enough to suggest some of the reasons
> why it has been perfectly natural for our cases to repeat time and time
> against that the normal thing to do when federal courts are asked to
> enjoin pending proceedings in state courts is not to issue such injunctions
> ....

*Id.*, 401 U.S., at 45, 91 S.Ct., at 751. The Court noted that the concept that the accused must first set up and rely on his defense in state court, even though it involves a challenge to the validity of some statute, has been repeatedly followed and affirmed. *Id.*, citing *Fenner v. Boykin*, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 (1926) (other citations omitted). The Court then noted:

> In all of these cases, the Court stressed the importance of showing irreparable injury, the traditional prerequisite to obtaining an injunction. In addition, however, the Court also made clear that in view of the fundamental policy against federal interference with state criminal prosecutions, even irreparable injury is insufficient unless it is 'both great and immediate (citation omitted).' Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable' in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution. *See e.g., Ex parte Young, supra*, 209 U.S. at 145 –147, 28 S.Ct. at 447–449.
>
> .... And similarly, in *Douglas, supra*, we made clear after reaffirming this rule, that:
>
> > 'It does not appear from the record that petitioners have been threatened with any injury other than that incidental to every criminal proceeding brought lawfully and in good faith ...' 319 U.S., at 164, 63 S.Ct., at 881.
>
> .... Here a proceeding was already pending in the state court, affording Harris an opportunity to raise his constitutional claims. There is no suggestion that this single prosecution ... is brought in bad faith or is only one of a series of repeated prosecutions to which he will be subjected. In other words, the injury that Harris faces is solely 'that incidental to every criminal proceeding brought lawfully and in good

faith,' *Douglas, supra*, and therefore under the settled doctrine we have already described he is not entitled to equitable relief 'even if such statutes are unconstitutional,' *Buck, supra*.

*Younger*, 401 U.S., at 46-49, 91 S.Ct., at 751-753. The principles of *Younger* apply to suits for declaratory relief as well as injunctions. *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971).

The Eleventh Circuit Court of Appeals has stated that *Younger* stands for "a basic doctrine of equity jurisprudence ... that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Lucky v. Miller*, 976 F.2d 673, 676 (11th Cir.1992). The plaintiffs argue that the *Younger* abstention doctrine does not apply to the facts before this court because they will not be afforded adequate protection should this court abstain. Plaintiffs' consolidated response to defendants' motions to dismiss, at 2, citing *The News Journal Corp. v. Foxman*, 939 F.2d 1499, 1508 (11th Cir.1991).

However, as the court noted above, all of the plaintiffs' arguments are based on the assumption that their machines are legal under Ala.Code § 13A-12-76.[10]   The

---

[10]For example, plaintiffs argue that the search warrants obtained before any search of the plaintiffs' businesses were improperly granted because they do not fall within any of the grounds listed in Ala.Code § 15-5-2.  Plaintiffs particularly assert that they do not come under (3) of that Code section, which states a warrant may be obtained for property "in the possession of any person with the intent to use it as a means of committing a public offense..."  The plaintiffs state that it is their "intent and understanding ... that their property is legal under Alabama Code §13A-12-76..."  Consolidated response at 3.

various State defendants strenuously disagree. *See e.g.*, defendant Barber's memorandum in opposition to plaintiff's motion, at 2-3 ("[t]he State filed a petition to condemn [Rabne's] machines on April 23, 2002 pursuant to § 13A-12-30(c) because they are in violation of § 13A-12-27"[11]) and 8 ("The plaintiffs are not entitled to compensation because, under the laws of Alabama, their machines are illegal gambling devices and are subject to the forfeiture statute. Plaintiffs' property is contraband ...."). Thus, without first determining whether under Alabama law these machines are legal or illegal gambling devices, this court can make no further determinations – and the issue of the legality of these machines is not an appropriate question for this court to address under *Younger*. The determination of the legality of the machines is wholly a matter of state law.

In *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Court states that abstention is appropriate in three general categories of cases. *Id.*, 424 U.S. at 814, 96 S.Ct. at 1244. These include "cases presenting a federal constitutional issue which might be mooted or

---

[11]That Code section states:
**Possession of a gambling device**.
   (a) A person commits the crime of possession of a gambling device if with knowledge of the character thereof he manufactures, sells, transports, places or possesses, or conducts or negotiates any transaction affecting or designed to affect ownership, custody or use of:
      (1) A slot machine; or
      (2) Any other gambling device, with the intention that it be used in the advancement of unlawful gambling activity.
   (b) Possession of a gambling device is a Class A misdemeanor.

13

presented in a different posture by a state court determination of pertinent state law."

*Id.* Clearly, if an Alabama appellate court determines that machines of the type in question are clearly permissible under Ala.Code § 13A-12-76, this case is moot. Similarly, if that same court determines the machines in question are illegal under state law, this case is moot. In fact, the sole basis for plaintiffs' allegations to this court is the fact that Alabama law is unsettled as to the status of the machines in question. The fact that any resolution of the legality of the machines in the state courts moots the claims before this court justifies the application of the abstention doctrine to this case. *See e.g., Gibson v. Jackson*, 578 F.2d 1045, 1051 n. 24 (5th Cir.1978) (stating "[i]t has been suggested that abstention is appropriate only where the issue of state law is uncertain").

Additionally, the Court in *Colorado River Water District* stated that abstention is appropriate where "absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings. *Id.*, 424 U.S., at 816, 96 S.Ct., at 1245, citing *Younger, supra.*

The plaintiffs also assert that no procedure in Chapter 15 of the Alabama Code provides pre- or post-deprivation hearings for a person whose property has been taken by the State. Consolidated response at 2. However, before asserting that state law remedies are inadequate, the plaintiffs must avail themselves of these remedies, which

14

they have failed to do.  Under § 15-5-3, Ala.Code and Rule 3.9, Alabama Rules of

Criminal Procedure, a search warrant can only be issued on probable cause, supported

by an affidavit naming or describing the person and particularly the place to be

searched.  Under § 15-5-5, Ala.Code, the judge or magistrate must issue the warrant

if he or she is satisfied of the grounds of the application or that there is probable

ground to believe their existence.  Under § 15-5-15, if the grounds on which a search

warrant was issued should be controverted, the judge must proceed to hear testimony.

Under § 15-5-16 and Rule 3.13, Alabama Rules of Criminal Procedure, the judge must

direct the property to be restored to the person from whom it was taken if it appears

there was no probable cause for believing the existence of the ground on which the

warrant was issued.  These state procedures provide a remedy at law which, in

essence, is the same remedy plaintiffs seek in federal court in the form of an

injunction and declaratory judgment.

Thus, the court finds the plaintiffs have more than adequate remedies available

to them in the state courts, none of which have been exercised.  For example, the

plaintiffs could have filed a motion with Judge Thorn, asking Judge Thorn to remove

the proceedings against their property from the administrative docket due to

irreparable harm which could result from not having their rights adjudicated.[12]  If Judge Thorn declined to do so, the proper course of action is then a writ of mandamus to the Alabama Supreme Court.  Plaintiff Taylor, who voluntarily closed his business rather than risk arrest or charges, as well as the other plaintiffs, also have an adequate remedy with the Alabama courts, namely a declaratory judgment action for a determination of whether their machines are legal under § 13A-12-76.  This is especially true given that the plaintiffs assert they have licenses from the state to operate their businesses.  The plaintiffs are not entitled to instead seek the opinion of a United States District Judge on the question of whether or not their machines are legal under Alabama law, especially when this very question is pending before the Alabama courts.[13]

_____

[12]Defendant Barber represents that plaintiffs Jordan, Williams and Cooper have not objected to their cases being placed on the administrative docket. Plaintiff Rabne filed a motion for summary judgment and a motion to remove his case from the administrative docket. However, Judge Thorn denied those motions and plaintiff Rabne has not filed a writ of mandamus or interlocutory appeal. *See* brief in support of defendant Barber's motion to dismiss, at 10, defendant Barber's memorandum in opposition, at 9, and note 4, *supra.*

In the plaintiffs' complaint, they assert that Judge Thorn's Order "falsely states that Plaintiff Jordan's forfeiture case is pending in the state Court of Appeals." Complaint at ¶ 61. That Order was amended on August 20, 2002, to correctly state that "A case substantially similar to this case is currently pending in the Court of Civil Appeals..." August 20, 2002 Order of Hon. Wayne Thorn, CV 2002-2225 (Circuit Court of Jefferson County), submitted as Exhibit 4 to defendant Barber's memorandum in opposition. Similar Orders were entered in Rabne (CV 2002-2479) and Williams and Cooper's (CV 2002-2937) cases by Judge Thorn. *See id.,* at Exhibits 5 and 6.

[13]The court notes that the Alabama courts which have addressed the issue have concluded that machines of the type in question were unlawful gambling devices and thus subject to forfeiture under Alabama law. *See e.g., State of Alabama v. $1,895.00 U.S. Currency and 32 Video Gambling Devices*, CV99-7032 (Circuit Court of Jefferson County, Alabama)(currently on appeal to the Alabama Court of Civil Appeals); *Faircloth v. Woodward*, CV 02-1912 (Circuit Court of Jefferson County, Alabama)(containing a history of the various ruling of courts and the state Attorney General in Alabama as well as the history of defendant Woodward's actions

The Eleventh Circuit Court of Appeals has addressed this issue. In *Butler v. Alabama Judicial Inquiry Com'n*, the Court, in considering whether the abstention doctrine applied, stated as follows:

> In *Butler I*, we said that "[plaintiff] bears the burden to establish that the state procedures are *inadequate*." 245 F.3d at 1262 (emphasis in original). We said "[m]inimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights." *Id.* (emphasis in original) (quoting *Middlesex County Ethics Comm. v. Garden State Bar Assoc.*, 457 U.S. 423, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982)). So, we start with the belief that state courts are commonly able to address federal constitutional challenges adequately. The federal plaintiff, having failed to raise his federal claims in the ongoing state proceeding, must overcome this premise by demonstrating inadequate state remedies ....
>
> ....
>
> But, in the interest of comity and federalism, we err--if we err at all--on the side of abstaining. [FN6]
>
>> FN6. *Younger* abstention often involves a level of uncertainty. Because the federal plaintiff decided to proceed in federal court instead of raising the federal issues in the ongoing state proceeding, sometimes we do not know, for certain, how the state court would have responded to the federal issues if properly raised in the state court by that particular federal plaintiff. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 1528, 95 L.Ed.2d 1 (1987) (internal citation omitted) ("We cannot assume that state judges will interpret ambiguities in state procedural law to bar presentation of federal claims. *Accordingly, when a litigant has not attempted to present his federal claims in related state-court proceedings, a*

within Jefferson County, Alabama, not appealed); *Slatton v. Davis,* CV 2002-105 (Circuit Court of St. Clair County); *Rainbow Reels II v. Tirey,* CV 02-289 (Circuit Court of Walker County) and *Cowboy's Lounge v. Hayes*, CV 01-1142-WAM (Circuit Court of Etowah County).

> *federal court should assume that state procedures will*
> *afford an adequate remedy, in the absence of unambiguous*
> *authority to the contrary* (emphasis added)".

Butler, 261 F.3d 1154, 1159 (11th Cir.2001).

Both sides argue to this court that *Novel Management v. Woodward*, CV 01-BU-1699-S (N.D.Ala.2001) supports their respective positions.  The facts before this court are strikingly similar to those faced by the Hon. Dean Buttram in *Novel Management.*  There, the plaintiffs asserted they were entitled to preliminary and permanent injunctions to prevent defendant Woodward from violating their Fourth, Fifth and Fourteenth Amendment rights.[14] *Id.* at 5.  Judge Buttram, upon consideration of those facts, stated as follows:

> ...the Court wishes to make absolutely clear what is <u>not</u> at stake in these proceedings.  First, Plaintiffs have not challenged any Alabama statute on the grounds that it is violative of either the United States Constitution or any other federal law.  Thus, this Court is not interpreting whether any of Alabama's laws regulating gambling are unconstitutional, either on their face or as applied.  Second, this Court cannot declare whether the particular machines in Plaintiffs' possession are, in fact, illegal gambling devices under Alabama law or instead merely bona fide amusement machines for purposes of § 13A-12-76, Ala.Code 1975.  *Such is purely a question of state law, and it is simply outside the province of this Court to decide it* .... [Plaintiffs] may either continue to operate their machines and risk arrest and/or the seizure of their machines and press their arguments that their machines are legal in subsequent criminal or

---

[14]The plaintiffs in *Novel Management* alleged "Woodward's public declaration that his department was going to start confiscating video machines throughout Jefferson County without first giving Plaintiffs an opportunity to be heard also violated Plaintiffs' constitutional rights." *Novel Management, supra,* at 5-6.

> forfeiture proceedings.  However, *the more secure route available to them would be to file a declaratory judgment action in state court.*  And third, this case gives no cause to review or consider the correctness of Judge Thorn's findings or conclusions in the state court forfeiture action. None of the Plaintiffs in the instant action was even a party to or intervenor in that state court action, and this Court should not be confused with the Alabama state appellate courts (emphasis added).

*Novel Management,* at 7-8.  Judge Buttram also noted that the issue of warrants for seizure of the machines in question was not a matter of "probable cause," but rather whether these machines were legal under state law.  He reiterated that "this is not the appropriate forum to attempt to resolve questions of state law."  *Id,* at 9.  *See also Abbott Amusements, Inc. v. Tirey, et al.,* CV-01-N-1775-S (N.D.Ala. Aug. 10, 2001); *O'Neil et al., v. Tirey, et al.,* CV-01-J-2072-J (N.D.Ala. Sept. 14, 2002) (where this court held that the court "cannot determine whether the machines in question are illegal gambling devices as such is solely a matter of state law"); and *A & M Enter., Inc., et al., v. Houston,* 2001 WL 957956 (M.D.Ala 2001).

In their reliance on *Novel Management,* the plaintiffs ignore all of the foregoing and state merely that Judge Buttram determined that Judge Thorn's finding that certain machines were illegal gambling devices did not mean that other machines were automatically subject to seizure.  *Novel Management* at 10.  However, Judge Buttram concluded that "Plaintiffs have failed to demonstrate that there is a substantial likelihood that they will be able to show on the merits that the seizure of their

machines pursuant to a warrant will work a constitutional deprivation." *Id.* He also noted that the Constitution did not require a pre-deprivation hearing when the property in question was seized with probable cause to believe it was contraband under state criminal law. *Id.*

Plaintiffs' argument to this court that the warrants in question describe "machines that are legal under Alabama Code § 13A-12-76" does not cure the fact that whether or not these machines are indeed legal under Alabama law is the very question pending before Alabama courts now.[15] *See* consolidated response at 4. Because the plaintiffs cannot establish that the specific machines in question here are legal under Alabama law without litigation in Alabama courts, this court is without any basis to determine whether the machines in question were seized "without probable cause to believe that [the machines] were illegal."[16] Consolidated response at 4.

Plaintiffs' also argue that the "unreasonable delay" in holding forfeiture hearings violates their due process rights. Consolidated response at 5. However, the

---

[15]Interestingly, plaintiffs argue that their machines are legal under § 13A-12-76, Ala.Code, but also argue that the "Alabama statutory scheme regulating video gaming machines is so vague as to render it useless." Consolidated response at 17. The court does not address this argument directly, as it would be better resolved by a declaratory judgment action filed with the state courts. If, as plaintiffs assert, their machines are legal under § 13A-12-76, the likelihood of plaintiffs seeking to have said Code section found void for vagueness is minimal.

[16]The court notes that the very issues of the legality of the machines in question and the constitutionality of Ala.Code § 13A-12-76 are being litigated in the Circuit Court of Montgomery County in *Pryor v. Westfaul*, CV 99-7032.

court finds that the plaintiffs have taken no action to try to obtain hearings. Rather, they have sat passively in state court and instead come to federal court with the assumption that the machines in question are legal. The plaintiffs then jump to the conclusion that, because their machines are allegedly legal, they have been deprived of their property an unreasonable amount of time because state procedures are either unconstitutional or inadequate. Consolidated response at 5. The plaintiffs reach this conclusion by asserting that the State fails to provide any sort of mechanism mandating a hearing. *Id.* However, the plaintiffs have done nothing to try to obtain a hearing and they have not petitioned a state court for a declaratory judgment that their machines are legal.[17] As such, they are estopped from arguing state procedures are inadequate. This is especially true given the plaintiffs' argument that they are not "parties" to the state court litigation concerning their property, namely *State of Alabama v. 46 Gambling Machines, In Possession of Phillip Rabne*, CV 2002-2479 (Circuit Court of Jefferson County); *State of Alabama v. $2,433.99 U.S. Currency and 36 Gambling Machines, In Possession of Jeffery Jordan*, CV 2002-2225 (Circuit Court of Jefferson County); and *State of Alabama v. $466.00 U.S. Currency and 27 Gambling Machines, In Possession of Jimmie Williams and Alton Cooper*, CV 2002-2937 (Circuit Court of Jefferson County). *See* consolidated response at 19. If the

---

[17]Clearly, should the machines in question be determined to be illegal under Alabama law, the plaintiffs are not entitled to their return.

plaintiffs believe the above cases involve possessions of theirs which were illegally seized, the appropriate place to litigate that issue is in the court where these case are pending.[18]

Additionally, the plaintiffs state that plaintiffs Taylor and Williams d/b/a Player's World do not have cases pending in state court but were "forced to shut down" their businesses "under threats of having their property seized and their businesses closed."[19] Consolidated response at 7. The court finds that, at most, these plaintiffs allege a prospective taking under the Fifth Amendment, but to date have suffered no such taking. Having voluntarily closed their businesses to avoid possible future forfeiture of their machines, these plaintiffs cannot assert that the state laws are inadequate for the return of their property which is still in their possession.[20]

---

[18]The court notes that plaintiff Jimmie Williams individually and Jimmie Williams d/b/a Player's World were parties in *Slatton v. Davis*, CV 2002-105 (Circuit Court of St. Clair County) (where court concluded "Plaintiffs' machines look like slot machines, sound like slot machines, and act like slot machines. They meet the statutory definition of slot machines. They are, therefore, slot machines and illegal in the State of Alabama. Consequently, they are explicitly beyond the scope of §13A-12-76"). *Id* at 14; submitted as Exhibit A to defendant Surles' motion to dismiss (doc. 20).

[19]In his opinion in *Slatton v. Davis*, CV 2002-105 (Circuit Court of St. Clair County), Judge Robinson observes, "This Court does have some sympathy for the Plaintiffs in that they invested in these machines and incurred expenses opening arcades in St. Clair County. However, the Court finds that the Plaintiffs were well aware of the risk when they purchased their business licenses to operate their arcades. Further, the Plaintiffs were their own worst enemies as far as the public is concerned in that their advertisements indicated that the arcades were similar to casinos." *Id*., at 14.

[20]The plaintiffs couch this argument in terms of having to forego "what [they] believe to be constitutionally protected activity in order to avoid becoming enmeshed in another criminal prosecution." Consolidated response at 8. While this court acknowledges that plaintiffs do have a constitutional right to be free from unreasonable seizures, and deprivation of property without due process of law, the court knows of no constitutionally protected right to operate a video arcade, whether the machines in it are legal or not. Unlike the case on which plaintiffs rely, *Wooley v. Maynard*, the plaintiffs here are not engaged in protected expression or "freedom of

22

In a similar case, *A& M Enter, Inc. v. Houston*, 2001 WL 957956 (M.D.Ala.2001), the plaintiffs asserted that their rights under the federal constitution, as enforced by 42 U.S.C. § 1983, were violated by the defendants seizing of plaintiffs' gaming machines. The plaintiffs sought a temporary restraining order and preliminary injunction to enjoin the defendants from any acts that deprived the plaintiffs of their constitutional rights, including but not limited to closing the plaintiffs' businesses, threatening to arrest the plaintiffs, or confiscating the plaintiffs' machines or money. *Id.*, 2001 WL 957956 at *2. Relying on *Novel Management*, the Court found the plaintiffs' likelihood of success on their Fourth Amendment claim to be "dubious." *Id.* at *3. The Court commented that, in *Novel Management*, "[i]nstead of going to state court, where they surely had an adequate, available forum, the plaintiffs reacted by filing a federal lawsuit." *Id.*

To avoid the problems the court cited in *A & M Enterprises,* the plaintiffs here allege that state remedies are inadequate. *See A & M Enterprises LLC v. Houston*, 179 F.Supp.2d 1356, 1361 (M.D.Ala.2001). However, as previously found by the court, the plaintiffs have taken no action at the state court level. As the Court found in *A & M Enterprises*, "[i]t may well be that Plaintiffs' activities do not violate the Alabama

---

thought." *See Wooley v. Maynard*, 430 U.S. 705, 710-14, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977). Furthermore, Williams has already had one state court judge rule that his machines are illegal under §13A-12-20 and therefore beyond the scope of §13A-12-76. *See Slatton v. Davis, supra.*

Constitution, but this is a question for the courts of Alabama. Plaintiffs have provided the court with no evidence to suggest that Alabama's procedures are inadequate in arriving at this determination. Absent such support, their 'allegations amount to mere speculation about contingent future events.'" *Id.*, at 1361, citing *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir.1995). The Court further noted that "[t]he matter before the court is solely one of the interplay between Alabama's criminal code and its state constitution. A federal court's attempt to dictate the appropriate guidelines under which the Alabama system of criminal justice operates on a day-to-day basis must bend to overriding principles of comity in all but the most constitutionally offensive matters." *A & M Enterprises*, 179 F.Supp. at 1363 n. 5, citing *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

Similarly, in *Jernigan v. State of Mississippi*, 812 F.Supp. 688 (S.D.Miss.1993), the plaintiff asserted that his video poker machines were not gambling devices and thus, his ownership of the machines was protected by the Fourth, Fifth and Fourteenth Amendments to the Constitution. Therefore, he argued, seizure of the machines would deprive him of his property without due process of law. *Id.*, at 690. That court was "of the view that the circumstances presented simply do not warrant the granting of such [injunctive] relief," in reliance on the *Younger* Court's observation that, "as a matter of equity, the federal courts should not act, 'and particularly should not act

to restrain a criminal prosecution, when the moving party has an adequate remedy at law ...'" *Jernigan*, 812 F.Supp. at 691, citing *Younger*, 401 U.S. at 43-44, 91 S.Ct. at 750.

The court finds that, even if the *Younger* abstention doctrine was not dispositive of the case before it, further cases from the United States Supreme Court are. In *Wooley v. Maynard*, the Court considered whether the plaintiff could proceed in federal courts for alleged violations of his civil rights given three arrests for violations of a state statute. The plaintiff served fifteen days in jail on the misdemeanor charges. *Id,* 430 U.S. 705, 708, 97 S.Ct. 1428, 1432, 51 L.Ed.2d 752 (1977). On appeal, the state argued that the United States District Court was precluded from exercising jurisdiction under the "principles of equitable restraint enunciated in *Younger v. Harris,"* supra. *Wooley,* 430 U.S., at 710-11, 97 S.Ct., at 1433-34. The Court stated that:

> It is correct that generally a court will not enjoin "the enforcement of a criminal statute even though unconstitutional," *Spielman Motor Co. v. Dodge*, 295 U.S. 89, 95, 55 S.Ct. 678, 680, 79 L.Ed.2d 1322 (1935), since "(s)uch a result seriously impairs the State's interest in enforcing its criminal laws, and implicates the concerns for federalism which lie at the heart of Younger," *Doran, supra*, 422 U.S. at 931, 95 S.Ct., at 2568 .... To justify interference there must be exceptional circumstances and a clear showing that an injunction is necessary in order to afford adequate protection of constitutional rights." *Spielman Motor Co., supra,* 295 U.S., at 95, 55 S.Ct., at 680.

25

In *Wooley*, the Court went on to note that "three successive prosecutions were undertaken against Mr. Maynard in the span of five weeks. This is quite different from a claim for federal equitable relief when a prosecution is threatened for the first time." *Id.*, 430 U.S. at 712, 97 S.Ct. at 1434. None of the plaintiffs before this court allege that criminal charges have been brought against them personally.

Further explaining the abstention doctrine, the Supreme Court has stated that it "does not arise from a lack of jurisdiction in the District Court, but from strong policies counseling against the exercise of such jurisdiction where particular kinds of state proceedings have already been commenced." *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S., 619, 626, 106 S.Ct. 2718, 2722, 91 L.Ed.2d 512 (1986). The Court further noted with approval the uniform application by lower courts of the *Younger* principle to pending state administrative proceedings in which an important state interest is involved. *See id.*, 477 U.S., at 627 n. 2, 106 S.Ct., at 2723 n. 2. Additionally, that case states "[w]e have repeatedly rejected the argument that a constitutional attack on state procedures themselves 'automatically vitiates the adequacy of those procedures for purposes of the *Younger-Huffman* line of cases.'" *Id.*, 477 U.S., at 628, 106 S.Ct., at 2723, citing *Moore v. Sims,* 442 U.S. 415, 427, n. 10, 99 S.Ct. 2371, 2379 n. 10.

26

While the plaintiffs themselves are not all parties to the state court actions pending against their property, they clearly have a justiciable interest in those actions. The fact that those cases are against their property rather than them as individuals, or individuals doing business as various establishments, does not change the application of the *Younger* doctrine which counsels against the exercise of jurisdiction in situations where state proceedings have already been commenced. *See Ohio Civil Rights Comm'n, supra.* This court notes that, should it proceed with this case on its merits, the state cases could theoretically find the seizures of the property in question justified as contraband under the Alabama statute and this court could, at the same time, reach an opposite conclusion. This result would advance no purpose as this court cannot "trump" a state court decision on questions of state law.

The court having considered the foregoing, the court is of the opinion that it must abstain from ruling on the merits of this case. The court finds substantial litigation is occurring in the Alabama state courts which is dispositive of the plaintiffs' claims before this court. The court finds the very nature of this action makes it a matter of solely state law, in which this court should not meddle. No fact better emphasizes this point then the very basis for the plaintiffs' claims – that being two Opinions of the Justices of the Alabama Supreme Court and one opinion of the state Attorney General. Given plaintiffs' reliance on these opinions as the basis for their

27

activities to be legal underscores the fact that this is a question for which the plaintiffs must seek redress in the state courts. Because the court finds the abstention doctrine dispositive of this case, the court does not reach the various other grounds for dismissal raised by the individual defendants, nor does the court express any opinion as to the merits of the plaintiffs' claims. The court finds solely that those claims do not belong in this court.

The court having found that this case is not properly before it on the basis of the abstention doctrine, the court is of the opinion that each of the defendant's motions to dismiss is due to be granted. The court shall so grant said motions and dismiss this case by separate Order.

**DONE** this the ___8___ day of <u>October</u>, 2002.

UNITED STATES DISTRICT JUDGE
INGE P. JOHNSON